IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**KERRI FIALA,**

        **Plaintiff,**

vs.	CIV No. 11-1010 JCH/WDS

**BERNALILLO COUNTY FIRE AND
RESCUE,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Bernalillo County Fire and Rescue's (hereinafter, "Defendant's" or "BCFR's") *Motion for Summary Judgment* (Doc. 64) and *Motion to Strike Plaintiff's Exhibits* (Doc. 74), as well as Plaintiff Kerri Fiala's *Motion to Exceed Page Limit for Exhibit B – Per Objections [sic] Recommendations and Findings* (Doc. 90).  In an action brought under Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act of 1990 for discrimination on the basis of gender, national origin, and disability, Plaintiff, a non-Hispanic white female and onetime firefighter, accuses Defendant, her former employer, of showing preferential treatment to a Hispanic male colleague after both were diagnosed with serious illnesses.  Defendant previously moved the Court to dismiss the instant action for Plaintiff's alleged failure to comply with discovery obligations (Doc. 35); Magistrate Judge Daniel W. Schneider recommended granting Defendant's motion.  (Doc. 84).  Because the Court preferred to reach the merits of the instant motion for summary judgment, it declined to grant Defendant's motion to dismiss.  (Doc. 98).

Three motions are still pending before this Court.  First, Defendant's motion for summary judgment contends that Plaintiff's claims should be dismissed for failure to assert a

prima facie case of discrimination. Second, Defendant asserts that the Court should strike from the record Plaintiff's exhibits to her response brief, on the argument that they contain Plaintiff's affidavit, which is not executed, and other documents that are immaterial to the issues before the Court; are hearsay or hearsay within hearsay; are duplicative; and/or are improperly proffered in violation of the prohibition against breaching the confidentiality of settlement negotiations. Finally, Plaintiff moves the Court to allow her to exceed the page limits for her objections in response to Judge Schneider's report and recommendation. The Court having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that Defendant's motion for summary judgment should be granted, and that Defendant's motion to strike and Plaintiff's motion to exceed should be denied as moot.

## FACTUAL BACKGROUND

### Plaintiff's Employment With Defendant and Extended Medical Leave

Plaintiff, who was known as Kerri Elizabeth Niggel at the time of the events in issue, is a caucasian female. Plaintiff was hired as a Firefighter by Defendant on or about March 25, 2002. Plaintiff remained at the rank of Firefighter until her voluntary resignation from BCFR on October 28, 2009. At no time during her employment with Defendant did Plaintiff test for or attain certification as a paramedic, nor did Plaintiff ever test for or attain the rank of Lieutenant.

On or about December 17, 2008, Plaintiff took sick leave from BCFR due to her diagnosis with hypogammaglobunemia, a primary immune deficiency disease. This leave was approved for about two months, through February 24, 2009. Upon her return to work, Plaintiff requested and was subsequently granted an additional six months' leave, from February 27, 2009 through August 31, 2009.

**Plaintiff's Return to Work, and Subsequent Illness**

On a date not set forth by the parties, Plaintiff requested another six months of medical leave, which Defendant denied. It is unclear from the facts as set forth by the parties when Plaintiff returned to work.

On September 23, 2009, Dr. John Henry Sloan of the Physical Medicine and Rehabilitation Department of Manzano Medical Group, P.C., issued a letter to the Human Resources Department of BCFR explaining why, in his medical judgment, Plaintiff could not return to work. Sloan noted that Plaintiff's

> immune system is too compromised to work in this position. She must receive injections of immune gammaglobulin from her allergist approximately every three to six weeks to maintain what is considered "normal" levels. Therefore, to place her into [a firefighter's] occupational setting would not be appropriate clinically.

(Doc. 65 Ex. D).

On October 15, 2009, Plaintiff's mother died of H1N1 influenza, and Plaintiff took two shifts of bereavement leave. Plaintiff asserts that three members of her immediate family tested positive for H1N1 during this time period, and that she too was placed on the antiviral medication Tamiflu. Plaintiff then took an additional two days of unauthorized sick leave on October 24 and 27, 2009, after suffering flu-like symptoms. Plaintiff asserts that BCFR Deputy Chief Ron Keyworth advised her that taking any more unauthorized medical leave would result in her firing.

**Plaintiff's Request For Transfer to Light Duty Position is Denied; Resigns From BCFR**

On October 28, 2009, Plaintiff had a meeting with then-Chief of BCFR, John A. Garcia. According to Plaintiff, she began the meeting by requesting that Defendant move her to a "light

duty" position; Garcia replied that no such positions were available.  It is undisputed that Plaintiff then informed Garcia of her intention to voluntarily resign from BCFR.  Garcia urged Plaintiff to reconsider her decision; he also suggested that she explore the possibility of other employment opportunities with Bernalillo County.  Plaintiff responded that she would consider doing so.

On the same day, Plaintiff wrote a letter of resignation to Garcia, effective immediately.  Plaintiff explained that she had decided that it was "best for my family and I if I spend my time at home due to ongoing health issues."  (Doc. 65 Ex. A-2).  Plaintiff further expressed her "hope that one day I will be able to work again with the outstanding group of professionals at [BCFR]."  *Id*.

**Lt. Steve Lopez, a Firefighter Paramedic, Temporarily Reassigned to Position of EMS Liaison During Illness**

At the time of the events in issue, Lieutenant Steve Lopez was a Firefighter Paramedic with BCFR.  Lopez and Plaintiff served in different divisions of the Department – he in Support Services, Plaintiff in Operations.  Plaintiff does not specifically dispute that she and Lopez exercised different duties in their respective positions.

On a date not set forth by the parties, Gary Smith, who was employed by Defendant as an "EMS [Emergency Medical Services] Liaison," announced his decision to vacate his position.  Plaintiff does not specifically dispute that Smith's duties included "review and analysis of incident reports and medical procedures, knowledge and training on the requirements for all licensure levels in BCFR, acting as liaison with other agencies[,] and assisting with training in BCFR."  (Doc. 65 at 3-4) (quotation omitted).  Smith further states that "one of the basi[c]

requirements of the EMS Liaison position was paramedic certification and training."[1]  *Id*. at 4 (quotation omitted).

On a date not set forth by the parties, Lt. Lopez began undergoing a specified course of treatment for an unidentified serious medical condition.  Lopez thus sought temporary reassignment to a different position with BCFR which required less physical exertion than his Firefighter Paramedic position.

On a date not set forth by the parties, Chief Garcia offered Lopez temporary reassignment to the EMS Liaison position.  It is undisputed that Garcia considered Lopez' training and education, including his certification and 15 years' work experience as an EMT; BS in Biology from New Mexico State University; experience as an Emergency Room Technician at the University of New Mexico Hospital; certification and 12 years' work experience as a paramedic; prior experience serving in the Los Alamos and Santa Fe County Fire Departments as a Paramedic Firefighter before coming to BCFR; and completion of the PreHospital Life Support Instructor course by the National Emergency Medical Technicians and the American College of Surgeons.

It is undisputed that Lopez' reassignment to the EMS Liaison position was temporary.  On a date not set forth by the parties, Lopez returned to his prior field duty assignment as a Paramedic Firefighter.  Plaintiff does not specifically dispute that the now-vacant EMS Liaison position was subsequently applied for and obtained by another firefighter, not identified in the

---

[1] In an apparent attempt to specifically dispute Defendant's characterization of Smith's job duties, Plaintiff points to the affidavit testimony of Diego Arencon, General President of the International Association of Firefighters, Local 244, that he is "unaware of a position known as 'EMS Liaison.'"  (Doc. 71 Ex. B Arencon Aff. ¶ 2).  The Court finds Arencon's testimony insufficient to support Plaintiff's conclusion that the position of EMS Liaison has "no minimal requirements."  (Doc. 70 at 9).

record by name, who, like Lopez, was a Lieutenant and Paramedic Firefighter.

## LEGAL STANDARD

### Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure requires that summary judgment be rendered "where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 725 (10th Cir. 2006); *see also* Fed. R Civ. P. 56(c)(2). The moving party bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and marks omitted). Once this burden has been met, "the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id. See also Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1993). It is not enough for the nonmoving party to "rest on mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also West v. New Mexico Taxation and Rev. Dept*., No. Civ. 09-0631, U.S. Dist. LEXIS 131626, at *42 (D.N.M., Oct. 31, 2010) ("[n]or can a party avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation") (internal quotation and marks omitted). In reviewing a motion for summary judgment, the court must "examine the factual record and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1184 (10th Cir. 2010). Its function at this stage is "not . . . to weigh the evidence and determine the truth of the

matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 243.

## DISCUSSION

**I.     Defendant's Motion for Summary Judgment**

Plaintiffs' single cause of action combines three separate claims – for Title VII "disparate treatment" gender discrimination, Title VII "disparate treatment" national origin discrimination, and ADA disability discrimination.  Both types of claims – Title VII and ADA – are assessed under the allocation burdens set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which applies where evidence of discrimination is circumstantial. *See Mitchell v. Zia Park, LLC,* 842 F. Supp. 2d 1316, 1327 (D.N.M. 2012); *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1189.  (10th Cir. 2003).

Under the *McDonnell Douglas* analysis, if a plaintiff employee (1) establishes a prima facie case of discrimination, then (2) the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for having made adverse employment decisions regarding the plaintiff.  If the defendant meets its burden, all presumptions of discrimination are dropped, and (3) the burden shifts back to the plaintiff to show by a preponderance of the evidence that the defendant's proferred reasons for the allegedly discriminatory actions are merely a pretext for discrimination.  *See* 411 U.S. 792 (1973).  Here, BCFR contends that summary judgment should be granted against Plaintiff because she has not established a prima facie case of Title VII or ADA disparate treatment discrimination.

      **A.     Whether Plaintiff Establishes a Prima Facie Case Under Title VII**

To state a prima facie case of disparate treatment under Title VII, Plaintiff must

demonstrate that (1) she belonged to a protected class; (2) she was qualified for the relevant position; (3) she suffered an adverse employment action; and (4) the circumstances surrounding the adverse action "give rise to an inference of discrimination." *See Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005).

Here, Defendant does not dispute for purposes of the instant motion that Plaintiff can meet the first prima facie prong by demonstrating that she belongs to protected classes (based on gender and national origin[2]) within the meaning of Title VII.

### 1.     Plaintiff Does Not Proffer Sufficient Evidence That She Was Qualified For Her Position

With regard to the qualification prong of the prima facie test, Plaintiff's claim appears to be that she was qualified for (and suffered an adverse action with respect to) her position as a *Firefighter* with BCFR, and is not based on whether she was qualified for the position of *EMS Liaison*, to which BCFR temporarily reassigned Lt. Steve Lopez during his own recovery from illness. *See* Doc. 70 at 16 (Plaintiff arguing that "she was qualified for her position as Firefighter").

In support of its position that Plaintiff's diagnosis with the immune deficiency disease hypogammaglobunemia rendered her unqualified to continue in the position of Firefighter, Defendant notes that Plaintiff herself acknowledged in her resignation letter that it would be "best . . if I spend my time at home due to ongoing health issues," and that her physician Dr. Sloan, "who analyzed [P]laintiff's medical condition in the context of her job description," concluded in his September 23, 2009 report that, in his medical judgment, Plaintiff could not

---

[2]Accordingly, the Court need not reach the issue of whether Plaintiff's claim that members of a different ethnic group were given preferential treatment is properly categorized as a "national origin" discrimination claim.

return to work in her current position because her "immune system is too compromised to work in this position. . . . .to place her into [a firefighter's] occupational setting would not be appropriate clinically."  (Doc. 65 at 8) (citing Doc. 65 Ex. D).  Defendant notes that Sloan took into account "the working conditions that [firefighters] are exposed to," including "extreme temperatures" and "inherent hazards such as being exposed to fumes, heat, smoke, water, dust, fire retardant chemicals and toxic fumes," as well as inevitable contact with members of "the public[,] who can be dealing with a variety of infections and are, therefore, potentially infectious to firefighters, paramedics."  (Doc. 65 Ex. D).

      Plaintiff offers two points in support of her claim that she was, in fact, qualified to remain in the position of Firefighter after her diagnosis.  First, Plaintiff suggests that Defendant may not rely on Dr. Sloan's report because it was authored on September 23, 2009, and thus "does not [constitute] a final evaluation before [Plaintiff] returned to work on October 9, 2009."  (Doc. 70 at 17).  Second, Plaintiff takes issue with Sloan's finding in light of the fact that she "receives injections which stabilize her condition and do not render her incapable of performing her duties.  While fighting fires, [Plaintiff] wears a mask, as most firefighters do."  *Id.* at 18.  Plaintiff does not point to any evidence in the record supporting these assertions.

      The Court finds that Plaintiff fails to offer evidence in specific, factual form that would be sufficient for a jury to return a verdict in her favor.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  With respect to her first argument, Plaintiff does not offer any explanation as to how the lapse of two weeks between Sloan's report and Plaintiff's return from medical leave and just over one month from the report until Plaintiff's resignation on October 28, 2009, renders Sloan's medical opinion irrelevant, let alone offer evidence that her physical condition improved in that time frame.  Further, Plaintiff does not cite to any evidence

in the record supporting the conclusion that Sloan failed to take into account the facts that she takes unspecified injections and wears a mask when working in the field. Therefore, because Plaintiff fails to point to any evidence in the record tending to create a genuine dispute as to whether she was capable of meeting the physical demands of her position as Firefighter, and consequently, has failed to show that she can establish a prima facie case of Title VII disparate treatment discrimination, the Court finds that Defendant should be granted summary judgment on Plaintiff's Title VII.

### 2.     Plaintiff Does Not Proffer Sufficient Evidence of Adverse Action

Even assuming, *arguendo,* that Plaintiff had met her burden of showing evidence of qualification, the Court finds that she has not proffered evidence that she was subjected to an adverse employment action by BCFR. In support of the instant motion, Defendant points to the undisputed fact that Plaintiff voluntarily quit her employment with BCFR. However, it appears from Plaintiff's response that she does not allege that she was constructively discharged from BCFR or that BCFR failed to promote her to the position of EMS Liaison. Rather, Plaintiff alleges that she

> was adversely effected as she was not permitted to return [to] work with the same seniority she had accrued. If she would have returned under the conditions presented by BCFR, she would have lost the eight years of service and five years of volunteer work which [she] had already served with BCFR. This would adversely effect her years devoted to her retirement benefits.

(Doc. 70 at 18). Plaintiff's response does not provide any additional explanation as to the above statement, does not support this statement with citations to the record, and does not appear to refer to any of the parties' proposed material facts.[3] Because Plaintiff fails to press her point by

---

[3]While the parties both assert that Plaintiff took medical leave and bereavement leave on a number of occasions over the last year of her employment with BCFR, there is no suggestion

pointing to any evidence in the record supporting the vague allegations recited above, the Court deems her point forfeited and will not comb the record in an attempt to discover the nature of the adverse action she allegedly suffered.

### 3. Plaintiff's Alleged "Inference of Discrimination" is Not Linked to the Adverse Action She Allegedly Suffered

Finally, the Court notes that Plaintiff does not link the circumstances surrounding the adverse employment action she allegedly suffered – Defendant's unexplained refusal to allow her return to work with the same seniority – with her allegations of disparate treatment. With respect to the portion of her claim requiring her to set forth how the circumstances surrounding the adverse action give rise to an inference of discrimination, Plaintiff briefly and conclusively asserts that she "requested 'light duty' three weeks before the exact same position was created for Steve Lopez." *Id.* Plaintiff does not support her position with additional explanation or citations to the record.

Thus, because Plaintiff fails to establish a prima facie case of disparate treatment gender or national-origin discrimination under Title VII, the Court need not undertake to perform the remaining prongs of the *McDonnell Douglas* burden-shifting analysis. Accordingly, the Court finds that Defendant is entitled to summary judgment on her Title VII claims.

### B. Whether Plaintiff Asserts a Prima Facie Case of ADA Discrimination

To assert a triable claim for ADA discrimination, Plaintiff must offer evidence that: (1) she is a disabled person within the meaning of the ADA; (2) she is "qualified," i.e., able to perform the essential functions of the job, with or without reasonable accommodation; and (3)

---

in the proposed facts that Plaintiff was "not permitted to return to work with the same seniority" after she returned from them. Thus, the Court concludes that Plaintiff's Title VII cause of action is based on facts that Plaintiff fails to offer into evidence.

the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability. *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997).

### 1.     Plaintiff Does Not Proffer Evidence of Disability as Defined By the ADA

A "disability" for purposes of the ADA consists of "a physical or mental impairment that substantially limits one or more major life activities of such individual," "a record of such impairment," or "being regarded as having such an impairment....". 42 U.S.C. § 12102(1). Resolution of whether Plaintiff is a disabled individual within the meaning of the statute requires the Court to: (1) consider whether Plaintiff's hypogammaglobunemia is a physical impairment, (2) identify the life activity upon which she relies and determine whether it constitutes a major life activity under the ADA, and (3) ask whether the impairment substantially limited the major life activity. *MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1275 (10th Cir. 2005). "Whether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide." *Poindexter v. Atchison, Topeka & Santa Fe Ry. Co.*, 168 F.3d 1228, 1230 (10th Cir. 1999).

Turning to step one, the Court notes that BCFR does not dispute that Plaintiff has hypogammaglobunemia, an immune deficiency disease. Therefore, a jury could reasonably conclude, even without expert medical testimony, that Plaintiff had a condition affecting her immune system constituting a physical impairment under the ADA. *See* 29 C.F.R. § 1630.2(h)(1) ("Physical or mental impairment means: [] any physiological disorder, or condition . . . affecting one or more of the following body systems: . . . immune. . . .").

The second step requires Plaintiff to "precisely identify a major life activity affected by her impairment." *MacKenzie,* 414 F.3d at 1275 (burden of identifying major life activity on plaintiff on defendant employer's motion for summary judgment); *see also Poindexter,* 168 F.3d at 1232; *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 223 (5th Cir. 2011) (observing that the Supreme Court has not "recognized the concept of a per se disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies."). In support of her claim, Plaintiff asserts generally that her impairment "makes her unable to perform her duty as a firefighter," without elaborating further or citing to any relevant case law. (Doc. 70 at 24).

The Tenth Circuit has held that "working" constitutes a major life activity. *See Bristol v. Bd. of County Comm'rs,* 281 F.3d 1148, 1161 (10th Cir. 2002), *rev'd in part on other grounds,* 312 F.3d 1213 (10th Cir. 2002) (en banc). However, in "any claim where working constitutes a major life activity, a plaintiff must demonstrate she is unable to perform either a class of jobs or a broad range of jobs in various classes." *MacKenzie*, 414 F.3d at 1276. Here, Plaintiff fails to proffer any evidence that she was substantially limited in her ability to perform either a class of jobs or a broad range of jobs in various classes. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(I)); *see also Kaplan v. City of North Las Vegas,* 2 Fed. Appx. 727, 728 (9th Cir. 2001); *Avery v. Omaha Pub. Power Dist.,* 1999 U.S. App. LEXIS 17699, at *3 (8th Cir. 1999). Thus, the Court concludes as a matter of law that Plaintiff has not demonstrated an impairment to a major life activity.

Accordingly, the Court finds that Plaintiff has failed to establish the first prong of a prima facie case for ADA discrimination, by showing that she is a disabled person within the

13

meaning of the statute.

### 2. Plaintiff Does Not Proffer Evidence That She Was Qualified, With or Without Reasonable Accommodation, to Perform the Essential Functions of Her Job

Moreover, even assuming, *arguendo*, that Plaintiff had demonstrated that she was disabled under the ADA, the Court finds that her prima facie claim for disability discrimination would nevertheless fail at the second, "qualification" prong. The Tenth Circuit "break[s] down the question of whether a plaintiff is qualified into two steps:

> First, we must determine whether the individual could perform the essential functions of the job, i.e., functions that bear more than a marginal relationship to the job at issue. Second, if (but only if) we conclude that the individual is not able to perform the essential functions of the job, we must determine whether any reasonable accommodation by the employer would enable [her] to perform those functions.

*Mathews v. Denver Post*, 263 F.3d 1164, 1167 (10th Cir. 2001). In support of its position that Plaintiff could not perform the essential functions of her job, Defendant points to the medical opinion of Plaintiff's evaluating physician, Dr. Sloan, that Plaintiff's "immune system is too compromised to work in this position . . . to place her into such an occupational setting would not be appropriate clinically." (Doc. 73 at 11) (quoting Doc. 73 Ex. D). While not asserting a position as to whether any reasonable accommodation would have allowed Plaintiff to perform these essential functions, Defendant maintains that Plaintiff's only requested accommodation "was for another six months of medical leave following what had already been [eight] months [of prior leave], with no indication provided as to the projected duration of her condition." (Doc. 65 at 19).

In her response, Plaintiff appears to concede that her health impairment rendered her

unable to perform the essential functions of a firefighter.  *See* Doc. 70 at 24 (Plaintiff stating that she "agrees" that she receives injections from an allergist every three to six weeks, and that "these injections render her **temporarily** unable to perform her duties in the field," but not offering any explanation or evidence as to how long she is unable to work after receiving an injection or whether the course of treatment is of a fixed duration) (emphasis in the original). However, Plaintiff contends that Defendant could have reasonably accommodated her health issues by placing her on "light duty."  *See id.* at 25-26 (Plaintiff asserting that Steve Lopez was later "granted a 'light duty' position" that "had been vacant for six months" at the time she unsuccessfully "requested light duty" during her final meeting with Chief Garcia).

The Court finds Plaintiffs' assertions insufficient to show that she was denied a reasonable accommodation.  Crucially, Plaintiff must show that the accommodation in issue would have enabled her to "perform the essential functions" of her job.  *See Mathews*, 263 F.3d at 1167.  Here, Plaintiff repeatedly asserts that she requested unspecified "light duty" in lieu of leaving her employment at BCFR, but does not attempt to demonstrate that it would have been possible to undertake such duties and still perform the essential duties of her position as Firefighter.  On the contrary, Plaintiff contends that Defendant denied her a reasonable accommodation by not placing her in a *different* role altogether, the vacant position of EMS Liaison.  However, Plaintiff not only fails to argue that she had the necessary qualifications for the position – arguing instead that there were no minimum qualifications for the job, based on local Firefighters' Union General President Diego Arencon's affidavit testimony that he was unfamiliar with the position, and thus, what its qualifications would be – more significantly, Plaintiff fails to show that reassignment to a new position is a reasonable accommodation for disability in the Tenth Circuit.

15

Thus, because Plaintiff fails to establish a prima facie case of disparate treatment disability discrimination under the ADA, the Court need not undertake to perform the remaining prongs of the *McDonnell Douglas* burden-shifting analysis. Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's ADA claim.

II.     **Defendant's Motion to Strike Exhibits**

Next, Defendant moves to strike from the record a separate pleading (Doc. 71) filed by Plaintiff containing the exhibits to her response to Defendant's summary judgment motion. (Doc. 74). Defendant contends that all of Plaintiff's exhibits are either inadmissible, immaterial, or duplicative. As set forth above, however, the Court relied on only one of Plaintiff's exhibits in addressing Defendant's motion – the affidavit of Diego Arencon – as it was the only exhibit specifically discussed by Plaintiff in her response brief that the Court found relevant to its resolution of Defendant's motion. Accordingly, because it finds that Defendant should be granted summary judgment whether Plaintiff's exhibits on the motion are in the record or not, the Court finds that Defendant's motion to strike should be denied as moot.

III.    **Plaintiff's Motion to Exceed Page Limits**

Finally, the Court observes that Plaintiff's *Motion to Exceed Page Limit for Exhibit B – Per Objections [sic] Recommendations and Findings* (Doc. 90) – which seeks to enter into evidence 519 pages of Plaintiff's medical records – is still pending before it. Because the Court declined to adopt the Magistrate Judge's recommended disposition that this case should be dismissed for Plaintiff's failure to comply with discovery obligations, Plaintiff's objections to his recommendations are moot. Accordingly, the Court finds that Plaintiff's motion to exceed

should be denied as moot.

## CONCLUSION

Therefore, for the reasons set forth above, the Court finds that Defendant's *Motion for Summary Judgment* (Doc. 64) is **GRANTED.**  Defendant's *Motion to Strike Plaintiff's Exhibits* (Doc. 74) and Plaintiff's *Motion to Exceed Page Limit for Exhibit B – Per Objections [sic] Recommendations and Findings* (Doc. 90) are **DENIED** as moot.

_____
Judith C. Herrera
United States District Court Judge